IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| RICK KLEIBRINK | § | |
| | § | |
| Debtor. | § | CIVIL ACTION NO. |
| | § | |
| RICKY KLEIBRINK, | § | 3:07-CV-0088-K |
| | § | |
| Appellant, | § | |
| | § | |
| V. | § | |
| | § | |
| ELLEN KLEIBRINK and MID-STATE | § | |
| TRUST VII, | § | |
| | § | |
| Appellee-Claimant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Appellant Ricky Kleinbrink's ("Appellant" or "Debtor") appeal of the United States Bankruptcy Court's Memorandum Opinion and Order entered August 2, 2006 in Case No. 05-03512 BJH (Doc. No. 9). In that order the bankruptcy court found Appellee had a claim secured by property located at 1592 Poetry Road, Royse City, Rockwall County, Texas 75189 that survived Appellant's second Chapter 13 bankruptcy case. The Court **AFFIRMS** the bankruptcy court's Memorandum Opinion and Order for the reasons stated herein.

I.  **Factual and Procedural Background**

   A.   **Prior Proceedings**

On May 1, 2001, Ricky and Ellen Kleibrink were divorced. The final decree of

divorce which was recorded on May 9, 2001 awarded the real property located at 1592 Poetry Road, Royce City, Rockwall County, Texas 75189 to Appellant.

### 1. The First Bankruptcy Case

On August 31, 2001, Appellant filed a Chapter 13 bankruptcy case (the "First Case"). That case was dismissed on May 10, 2002 prior to the confirmation of a Chapter 13 plan of reorganization.

### 2. The Second Bankruptcy Case

Appellant filed a second Chapter 13 bankruptcy case (the "Second Case") on February 2, 2003. On March 18, 2003, Appellee filed a motion to dismiss the Second Case with prejudice (the "Motion to Dismiss"). In that motion, Appellee alleged that in 1996 Debtor/Appellant and Ellen Kleibrink entered into a retail installment contract (the "Note") with Jim Walter Homes, Inc. to purchase a home located at 1592 Poetry Road, Royse City, Texas (the "Property") and as security for the purchase price, gave Jim Walter Homes, Inc. a purchase money security interest in the Property which was subsequently assigned to Appellee. Further, Appellee alleged that it had set a foreclosure sale twice which was stayed both times when Appellant filed the First and Second Cases. After a hearing on June 19, 2003, the Motion to Dismiss was denied.

That same day, Appellee also filed a claim in the Second Case. On December 30, 2003, Appellant filed a Chapter 13 plan (the "Plan") and an objection to Appellee's claim. With respect to the Appellee, the Claim Objection stated:

II. Specific Objections

Debtor(s) hereby object to the following claims for the reason(s) indicated in Column 6. The Claims should be ALLOWED/DISALLOWED as indicated in Column 3 for the amount and class indicated in Columns 4 and 5 respectively:

| 1<br>Creditor Name | 2<br>Claim Amount | 3<br>Allow/ Disallow | 4<br>Amount | 5<br>Class (S, P, U) | 6<br>Reason(s) See Code Below | 7<br>CL # |
|---|---|---|---|---|---|---|
| Wilmington Trust Company | $10,468.93 | Allow | 0 | U | S-5, S-6, O-2 | 011 |
| Wilmington Trust Company | $86,325.92 | Allow | 0 | U | S-3, S-6, O-2 | 021 |

The "Reason(s)" codes referenced in column 6 stated as follows:

S-3: Claimant filed a "Secured" Proof of Claim but did not attach sufficient and/or legible documents to evidence a perfected lien or security interest in property of this Debtor's estate as required by Bankruptcy Rule 3001(d). Alternatively, claimant failed to serve on Debtor's attorney a copy of the Proof of Claim with all the attachments, as required by paragraph 7 of General Order 93-1. The claim should be ALLOWED as "Unsecured" only.

S-5: Claimant filed a "Secured" Proof of Claim. The claim includes interest, fees, or other charges which are unreasonable and/or unauthorized by law or the agreement between the parties. The claim should be DISALLOWED to the extent unreasonable or unauthorized.

O-2: Other: Failure to attach documentation providing determination of amounts owed, date(s) debt incurred and total amount claimed to be due.

On January 30, 2004, Appellee filed a response in opposition to Appellant's objection to claims; however, Appellee did not file an objection to the confirmation of the Plan. Accordingly, on March 1, 2004, the bankruptcy court entered an order confirming the Plan and an order granting Appellant's Claim Objection (the "Claim

Objection Order").

The Plan states, in Section I. (titled "Specific Provisions"), paragraph D (titled "Home Mortgage) as follows:

| Mortgagee | Arr. Amt. | Arr. Through | % | Term | Payment |
|---|---|---|---|---|---|
| 1st- Wilmington Trust Company | $10,468.93 | 2/03 | 7 | | Pro Rata- *Debtor Objects. |

Underneath that section, the Plan notes that "Regular payments beginning 03/03 to be paid direct." Page 2 of the Plan, in "Section II" (titled "General Provisions"), subparagraph D (titled "Principal Residence Arrearages (Home Mortgage)"), states as follows:

> Arrearages on claims secured only by a security interest in the Debtor's(s') principal residence shall be paid by the Trustee in the amount and at the Annual Percentage Rate of Interest indicated on Section I, Part "D" herein. To the extent the claim is over secured, interest will be calculated from the date of the Petition, otherwise from the confirmation date. Regular payments will be paid "Direct" by the Debtor(s) beginning on the date shown in Section I, Part "D". *Such creditors shall retain their liens.* (emphasis added).

Several weeks later, Appellee filed two motions in the Second Case. First, on April 14, 2004, Appellee filed a motion for relief from the automatic stay (the "Lift Stay Motion"). The bankruptcy court subsequently denied the Lift Stay Motion. Second, on May 4, 2004, Appellee filed a Motion to Vacate Order on Debtor's Objection to Claims and Substitute a New Order on Claim Objection without prejudice. The bankruptcy court also denied that motion.

On April 18, 2005, the bankruptcy court entered an Order discharging Debtor/Appellant. On August 24, 2005, the bankruptcy court approved the Trustee's final report and the Second Case was closed on November 3, 2005.

**B.     The Current Case**

Appellee attempted to foreclose on the Property at a sale set for September 6, 2005. On September 5, 2005, to avoid the foreclosure, Appellant filed his third Chapter 13 bankruptcy case (the "Current Case"). Ellen Kleibrink was not a joint debtor in the First, Second, or Current Case.

On October 13, 2005, Appellee filed two motions for relief from stay, "Motion for Relief from Automatic Stay Against Collateral Consisting of Real Property and Improvements," ("Stay Motion 1") and "Motion for Relief from Codebtor Stay Against Ellen E. Kleibrink a/k/a Ellen E. Goetz" ("Stay Motion 2").

After several hearings and extensive briefing on the motions to stay, the bankruptcy court issued a Memorandum Opinion and Order on August 2, 2006. The bankruptcy court denied Appellee's Stay Motion 1 without prejudice but found that Appellee had a claim secured by the Property that survived the Second Case. In short, the bankruptcy court properly found that Appellee was in the somewhat anomalous position of holding a valid lien against the Property but, by virtue of the Appellant's discharge in the Second Case, having nothing owed to it *by the Debtor.* The bankruptcy court granted Appellee's Stay Motion 2 and lifted the stay as to co-debtor Ellen Kleibrink. Appellant files this appeal and incorrectly argues that Appellee has no lien.

## II. Standard of Appellate Review

A district court functions as an appellate court when reviewing a bankruptcy court's decision and applies the standard of review generally applied in the federal courts of appeals. *Webb v. Reserve Life Ins. Co. (In the Matter of Webb),* 954 F.2d 1102,1103-04 (5th Cir. 1992). The lower courts' findings of fact are reviewed for clear error, conclusions of law are reviewed de novo and matters left to the lower courts' discretion are reviewed for abuse. *In re Cueva,* 200 Fed. Appx. 334, 335 (5th Cir. 2006).

## III. Legal Analysis

### A. Res Judicata, Collateral Estoppel, Issue Preclusion and Laches

#### 1. Res Judicata

The bankruptcy court correctly held that Appellee's lien survived the Second Case. Appellant argues that the bankruptcy court's orders in the Second Case bar any reconsideration of orders in that case under the doctrine of res judicata. Appellant's argument fails because as Appellee properly asserts a final judgment disallowing Appellee's lien was never ordered.

The doctrine of res judicata encompasses two separate but related preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion. *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2004)(citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir.2000)) The elements of res judicata are (1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3)

there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases. *Singh*, 428 F.3d at 571. Therefore, res judicata bars subsequent litigation of claims that have been litigated or should have been raised in an earlier suit. *Id.*

The relevant objections to claims and orders in the Second Case did not disallow any claims. As the bankruptcy court notes, the Claim Objection in the Second Case did not "clearly" notify Appellee that its secured claim was at risk nor that Appellant was seeking to extinguish Appellee's ability to look to its collateral. Specifically, the Claim Objection did not "disallow" Appellee's claim, but rather, it sought to allow the claim at a zero amount. The bankruptcy court also noted that the *confirmed* Plan provided that Appellee would retain its lien. The bankruptcy court went on to conclude that the Claim Objection in the Second Case did not become an adversary proceeding. Indeed, the practice in this district is for the bankruptcy court to enter an order directing the Clerk to open an adversary proceeding at the request of the parties or when the bankruptcy court becomes aware of the nature of the claim objection. Because Appellee did not receive clear notice nor an adversary proceeding, the Appellee was not afforded the procedural safeguards necessary to extinguish a lien. Because the Claim Objection did not give clear notice that Appellant sought to extinguish Appellee's lien and the lack of procedural safeguards that Appellee would have been afforded in an adversary proceeding, no final judgment disallowing Appellee's lien was entered. Therefore, Appellant has failed to establish all the requisite elements under the doctrine of res

judicata.

Appellant argues that the Fifth Circuit gave a Chapter 13 plan res judicata effect in *Republic Supply Co. v. Shoaf.* 815 F.2d 1046 (5th Cir. 1987). In that case, res judicata effect was only given where a confirmation plan expressly released a third-party guarantor. However, as stated above, no order expressly extinguished Appellee's lien in this case.

Appellant also argues by that the validity of a claim that has been rejected may not be re-litigated in another proceeding by citing *Katchen v. Landy*, 382 U.S. 323 (1966). That finding presupposes that a claim's validity has already been litigated. Again, this Court agrees with the bankruptcy court that no order was ever entered in the Second Case which would have extinguished Appellee's lien. For the reasons stated above, the Court concludes that the doctrine of res judicata does not apply as no final order was entered that would extinguish Appellee's lien.

### 2. Collateral Estoppel and Issue Preclusion

Collateral estoppel encompasses three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in the earlier action. *Stripling v. Jordan Production Co., LLC,* 234 F.3d 863, 868 (5th Cir. 2000). Appellant cites law that collateral estoppel requires a full and fair opportunity to litigate the issue. In his Appeal Brief, Appellant summarily asserts just two sentences as the basis of his collateral

estoppel and issue preclusion argument without acknowledging the bankruptcy court's conclusions. As the bankruptcy court correctly found, Appellee was denied a full and fair opportunity to litigate the issue of whether its lien was extinguished because the Claim Objection did not give Appellee adequate notice nor was Appellee afforded an adversary proceeding.

### 3. Laches

Appellant argues that the equitable defense of laches prohibits Appellee from now raising issues regarding Appellee's security in the Property. In other words, Appellant contends that it is too late for the Appellee to raise such issues as they could have been raised in the Second Case. Appellant's argument is without merit.

The equitable defense of laches has three elements: (1) delay in asserting a right or claim; (2) the delay was inexcusable; and (3) undue prejudice resulted from the delay. *Armco, Inc. v. Armco Burglar Alarm Co. Inc.,* 693 F.2d 1155, 1161 (5th Cir. 1982). Laches does not apply in this case because Appellee had nothing to raise until Appellant filed the Current Case and took the position that no lien existed. The issue of whether Appellee's lien had been abrogated by the ambiguous pleadings from the Second Case was brought before the bankruptcy court in the Current Case only after Appellant failed to make his mortgage payments and filed for bankruptcy in order to stay the foreclosure sale. Appellee did not delay in asserting its rights once the issue was brought before the bankruptcy court; therefore, Appellant's laches defense fails.

### B. Requirement of an Adversary Proceeding

Appellant essentially argues that the bankruptcy court improperly held that a claim objection *can* be, but is not always, sufficient to extinguish a lien. Rather, Appellant contends that a claim objection *is always* sufficient to extinguish a lien by citing *In re Howard,* 972 F.2d 639 (5th Cir. 1992) and *In re Simmons,* 765 F.2d 547 (5th Cir. 1985). For the reasons stated in this section, Appellant's argument fails.

The bankruptcy court correctly held Appellee's lien survived the Second Case. A bankruptcy does not, by itself, extinguish a lien. Accordingly, a confirmation of a chapter 13 plan of reorganization, in and of itself, does not extinguish a lien. *In re Simmons,* 765 F.2d 547, 555 (5th Cir. 1985). A bankruptcy discharge extinguishes only an action against the debtor *in personam* leaving a creditor the right to pursue an action against the debtor *in rem*. *Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991).

There are two ways in which a lien may be extinguished that are relevant to this case: (1) by providing for, and paying in full, the underlying debt under a confirmed plan and (2) by operation of § 506(d) of the Bankruptcy Code. With respect to the first method, a lien will be extinguished where the debt is provided for, and paid in full under the confirmed plan. *In re Allen,* 122 Fed. Appx. 96, 97 (5th Cir. 2004). Under this method, it is not that the lien is extinguished, but rather, the underlying debt is paid such that the lien secures nothing and is therefore discharged. However, if the debt is not paid in full under the plan, the lien remains intact and passes through bankruptcy unaffected. As stated above, a lien can also be extinguished by operation of § 506 of

the Bankruptcy Code. Section 506 provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
> * * *
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless –
> > (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
> > (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506.

The Federal Rules of Bankruptcy contain two separate mechanisms to implement § 506: (1) Rule 3012 and (2) Rule 7001. Rule 3012 provides that the court "may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim...." Rule 7001 provides that "an adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:...(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property...." Therefore, Rule 3012 can be used to extinguish a lien when the basis for its avoidance is a valuation of the collateral under § 506(a); however, Rule 7001 is used to extinguish a lien when the validity, priority or extent of a lien is challenged.

The Court agrees with the bankruptcy court's analysis that a motion is sufficient

to strip a lien where the lien stripping occurs as a result of a § 506(a) valuation and an adversary proceeding is required where a debtor seeks to extinguish a lien by its validity, priority or extent. Most relevant to this case, the bankruptcy court properly concluded that the claim objection may "substitute" for an adversary proceeding where the claim objection is clearly joined with a demand for relief of the kind specified in Rule 7001–that is where the claim objection gives clear notice that the debtor is challenging the validity, priority, or extent of the lien and seeks to abrogate a creditor's right to look to its collateral, and the debtor complies with procedural safeguards set forth in Part VII of the Federal Rules of Bankruptcy Procedure.

Because a claim objection may substitute for an adversary hearing, such a claim objection is the third way to extinguish a lien under the Bankruptcy Code and Rules. Section 502 provides that "a claim or interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest...objects." Rule 3007 provides

> An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant . . . at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

In *Simmons,* the Fifth Circuit held that confirmation of a chapter 13 plan did not operate to extinguish a lien where the debtor had not filed an objection to the creditor's claim. 765 F.2d at 55947. The Court in *Simmons* stated that "the purpose of filing an objection is to join issue in a contested matter, thereby placing the parties on notice that litigation is required to resolve an actual dispute between the parties." *Id.* at 552. The

Fifth Circuit was ruling only upon the sufficiency of the plan confirmation process and did not reach the question of whether a claim objection is sufficient to avoid a lien if the claim objection is not "joined with a demand for relief of the kind specified in Rule 7001." Fed. R. Bankr. P. 3007.

The issue before the court in *Howard* was whether a confirmed chapter 13 plan, which purported to reduce a creditor's secured claim, is res judicata as to that creditor. 972 F.2d 639 (5th Cir. 1992). The Fifth Circuit held that confirmation was not res judicata, and because the debtor did not file an objection to the secured claim, the creditor was entitled to rely upon its lien. *Id.* Specifically, the Fifth Circuit stated that "the key to *Simmons* is the requirement that a claim be objected to before the creditor loses its ability to rely upon its lien for relief...the filing of an objection is all that *Simmons* requires. Once a debtor has objected to a claim, the creditor is on notice that full participation in the confirmation proceedings is required or its lien will be at risk." *Id.* at 642. Unlike this case, in *Howard,* the plan at issue expressly provided for the lifting of the lien in accordance with the full payment of a sum certain.

The bankruptcy court properly noted that the issue before the Fifth Circuit in both *Simmons* and *Howard* was whether a *plan* was sufficient to avoid a lien. The facts in *Simmons* and *Howard* are not analogous to the facts in this case because (1) Appellant actually filed a claim objection but did not clearly challenge the validity, priority or extent of Appellee's lien and (2) the plan did not provide for lifting Appellee's lien after paying a sum certain.

- 13 -

In a more recent case, the Fifth Circuit indicated that the proper procedure to challenge the secured status of a loan is an adversary proceeding to determine the validity, priority, or extent of a lien. *In re Kinion,* 207 F.3d 751, 757 (5th Cir. 2000). In light of the Fifth Circuit's decision in *Kinion*, the Court agrees with the bankruptcy court that *Simmons* and *Howard* stand for the proposition that a claim objection is required before a creditor's lien will be extinguished under § 506–that is a claim objection *may,* but not always, substitute for an adversary proceeding.

The Appellant argues that the bankruptcy court took a position contrary to the Fifth Circuit's holding in *Howard* and *Simmons* by holding that a Rule 7001 adversary proceeding was required to be initiated by the debtor objecting to a creditor's secured claim. Appellant argues that a chapter 13 debtor's claim objection to the confirmation of a plan is sufficient to extinguish a lien and that "something more" than an objection is not required in the Fifth Circuit. For the reasons stated above, the Court finds that *at the least* a claim objection is required before a creditor's lien will be extinguished under § 506. In other words, a claim objection *might* be sufficient to extinguish a lien. A claim objection will extinguish a lien if it gives clear notice that the debtor is challenging the validity, priority, or extent of the lien and seeks to abrogate a creditor's right to look to its collateral, and the debtor complies with procedural safeguards set forth in Part VII of the Federal Rules of Bankruptcy Procedure. That was not done in the Second Case.

The Court agrees with the bankruptcy court's conclusion that Appellee was not afforded the appropriate procedural safeguards because the Claim Objection in the

Second Case did not clearly notify Appellee that its secured claim was at risk nor did the Claim Objection notify Appellee that Appellant sought to extinguish its ability to look to its collateral. As set forth in Section I of this Order, the Claim Objection did not seek to "disallow" Appellee's claim, but rather, it sought to allow the claim at a zero amount. Only after reading the Appellant's "objection codes" does it become clear that Appellant sought to allow the claim only as an unsecured claim, thereby arguably extinguishing the lien. However, if an adversary proceeding had been filed, Appellee would have been afforded additional procedural protections. Particularly in light of the fact that the confirmed Plan provided that Appellee would retain its lien, the Court concludes that the bankruptcy court properly held that the Claim Objection did not provide adequate notice to Appellee that Appellant sought to extinguish its lien.

Citing Rule 3007, Appellant argues that the claim objection "becomes" an adversary proceeding when the objection includes a challenge to the validity priority or extent of a lien. Appellant also cites *In re Robinson* in support of his argument that an adversary proceeding is not required to extinguish a lien because a claim objection becomes an adversary proceeding when joined with a demand for relief of the kind specified in Rule 7001. 217 B.R. 527, 530 (Bankr. E.D. Tex. 1998). The Court finds that the bankruptcy court properly distinguished *Robinson* from the facts in this case as the parties in *Robinson* were before the court vigorously defending their respective positions. *Id.* As set forth above, the Claim Objection in the Second Case did not give clear notice that the Appellant sought to extinguish Appellee's lien. Like the bankruptcy

court, the Court can not find that the Claim Objection in the Second Case became an adversary proceeding when none of the adversary proceeding rules were followed.

In short, the Court affirms the bankruptcy court's holding that when a debtor seeks to extinguish a lien, in addition to disallowing a claim, a motion is sufficient when the basis to avoid the lien is a § 506(a) valuation. However, when the debtor seeks to extinguish a lien under § 506(d), on the ground that it secures a claim which is not an allowed secured claim due to a successful challenge to the validity, priority, or extent of the lien, then an adversary proceeding is required, unless the debtor files a claim objection which affords the creditor due process before extinguishing its property right. The Claim Objection in the Second Case did not give clear notice that Appellant was challenging the validity, priority or extent of the lien; accordingly, the Claim Objection did not substitute for an adversary proceeding in the Second Case. Therefore, Appellee's lien survived the Second Case. Creditors, like Appellee, whose liens have survived bankruptcy may pursue actions post-discharge which are purely *in rem.*

### C. Effect of Former Wife's Joinder in Mortgage

Appellant contends that it is arguable that Ellen Kleibrink ("Codebtor") had no legal interest in the Property when the divorce decree was filed of record in Rockwall County. As the Court noted above in Section III. B. of this Order, Appellee's lien survived the Second Case. Therefore, the Court will not address at length Appellant's argument that the lien is void as to Codebtor. In any event, the Court notes that Codebtor was not relieved from liability on the note through the divorce decree or

during the prior bankruptcy proceedings. *See Villarreal v. Laredo Nat'l Bank,* 677 S.W.2d 600 (Tex. Civ. App.–San Antonio 1984, writ ref'd n.r.e.)(holding a division of the community estate does has no effect upon a creditor's recovery rights); *US v. Stribling Flying Serv., Inc.,* 734 F.2d 221, 223 (5th Cir. 1984)(holding discharge of a debtor does not affect the liability of any other obligor on the debtor's debts).

### D. Adequacy of Notice to Appellee

Appellant argues that Appellee had notice in the Second Case at each stage of the proceedings that he intended to set aside its lien. The Court in Section III. B. of this Order affirmed the bankruptcy court's conclusion that Appellee did not have clear notice that its lien was at risk. Accordingly, Appellant's argument that Appellee failed to timely appeal the rulings in the Second Case by waiting to raise the issue in the Current Case lacks merit.

### E. Lien Determination

Appellant argues that the bankruptcy court applied a double standard when the bankruptcy court ruled that Appellee's lien survived the Second Case because such a determination was not made in an adversary proceeding. Appellant contends that the bankruptcy court erred by ruling that he was required to file an adversary proceeding to extinguish the lien when the Appellant was only afforded a hearing on Stay Motion 2 before the bankruptcy court "reversed" its determination that both secured and unsecured claims were discharged. As aforementioned in Section III. B. of this Order, the Court finds that the bankruptcy court properly found that the Appellee's lien

survived the Second Case because the Claim Objection did not clearly notify Appellee that its claim was at risk. Accordingly, the bankruptcy court did not reverse itself in the Current Case and apply a different standard to Appellant when it entered the Memorandum Opinion and Order. Rather, the bankruptcy court properly held that the secured status of Appellee's lien had not been challenged by appropriate and customary bankruptcy procedures particularly in light of the fact that the Claim Objection did not provide Appellee with adequate notice and the Plan stated that Appellee as a secured creditor would retain its lien.

### F. Claim Determination

Appellant argues that even where a lien is asserted in a claim, that claim has to be allowed in some amount as a secured claim otherwise the lien is void. Appellant asserts that the value of a Appellee's claim in the Second Case was zero. He argues that under Section 506(d) no amount of secured claim could attach to the Property; therefore, the lien was void. As set forth above, the Claim Objection did not clearly notify Appellee that its lien was at risk. As set forth in Section I of this Order, the bankruptcy court's order dated March 1, 2004 in the Second Case shows that Appellant's Claim Objection states that Appellee's claims are "allowed." As Appellees notes, the term "disallowed" was never used in that March 1, 2004 order. Nowhere on the face of the claim objection does it state that any of Appellee's claims, secured or unsecured, should be disallowed. Rather Appellant sought to allow the claim at a zero amount. Section 506(d) provides that to the extent that a lien secures a claim against

the debtor that is not an allowed secured claim, such lien is void. Appellee's secured claim was not disallowed, therefore, § 506(d) should not apply.

Further, as the bankruptcy court properly held, the Claim Objection can only be understood by reading the objection codes; even then, it is not completely clear that Appellant is attempting to extinguish Appellee's lien. Because the Claim Objection did not clearly notify Appellee, Appellant's argument fails. The Court is reluctant to find that Appellant would receive a free house when the Claim Objection was not clear.

### G. Proof of Claim

Appellant asserts that Rule 3001 requires creditors to file proofs of claim attaching all documents evidencing that they have a valid and perfected security interest in collateral that is the debtor's property. As Appellee properly notes the bankruptcy code does not require a secured creditor to file proof of claim to preserve a lien because a lien survives the bankruptcy even when no proof of claim is filed. *See* 11 U.S.C. § 501; *In re Orr*, 180 F.3d 656, 660 (5th Cir. 1999). In fact a secured creditor can ignore bankruptcy and look solely to its collateral in satisfaction of the debt. *Kinion*, 207 F.3d at 751. The filing of a proof of claim is not the means through which a creditor can foreclose on collateral. Such a creditor, like Appellee, must seek and obtain relief from the automatic stay in order to foreclose. 11 U.S.C. § 362(a)(4). Therefore, the disallowance of a proof of claim, without more, does not extinguish a lien. The disallowance of a claim only means the creditor, like Appellee, would not be entitled to a distribution from the estate.

## IV. Conclusion

The Court **AFFIRMS** the bankruptcy court's Memorandum Opinion and Order because the bankruptcy court properly concluded that the lien survived the Second Case. The clerk is hereby directed to prepare, sign, and enter the judgment pursuant to Bankruptcy Rule 8016(a).

**SO ORDERED**.

Signed August 28th, 2007.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE